UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS WIMS,<br><br>Plaintiff,<br><br>v.<br><br>CONSORTIUM FOR OCEAN LEADERSHIP,<br><br>Defendant. | Civil Action No. 18-1058 (JEB) |

**MEMORANDUM OPINION**

After Plaintiff Thomas Wims was fired from his operations job at Defendant Consortium for Ocean Leadership, he brought this action under the False Claims Act, asserting that his termination stemmed from his uncovering the Consortium's fraudulent receipt of millions of dollars in federal grants from the National Science Foundation. When the United States declined to intervene, Wims amended his Complaint to add a wrongful-discharge count under District of Columbia law. In moving to dismiss only this latter count, the Consortium points out that at-will employees like Plaintiff cannot proceed on such a claim under D.C.'s public-policy exception when they have other avenues of statutory or administrative relief available — here, the FCA. Agreeing with this position, the Court will grant the Motion and dismiss Count II only.

I. Background

Plaintiff first brought this suit in May 2018 against the Consortium, the Woods Hole Oceanographic Institution (WHOI), and Rutgers, the State University of New Jersey. See ECF No. 1. The thrust of this FCA action was that all three Defendants had "fraudulently obtained millions of dollars in federal grant dollars [*sic*] awarded by the National Science Foundation."

1

Id., ¶ 2. More specifically, the Consortium was the "Prime Awardee for NSF's multi-institutional Ocean Observatories Initiative ('OOI'), which involves the installation of a network of instruments, undersea cables, and instrumented moorings that spans the Western Hemisphere and measures physical, chemical, geological, and biological phenomena in key coastal, regional, and global areas." Id., ¶ 3. Its subawardees were WHOI and Rutgers, who were purportedly submitting fraudulent requests for reimbursement to the Consortium, which it allegedly concealed. Id., ¶¶ 6-7, 10. Because Wims "refused to stop questioning Defendants' illegal conduct related to the NSF grants, [the Consortium] unlawfully terminated his employment." Id., ¶ 12.

As is the case in FCA matters, the United States had the opportunity to intervene, but after several extensions, it declined to do so. See ECF No. 9 (Notice of Election to Decline Intervention). Wims subsequently filed an Amended Complaint, in which he dropped Defendants WHOI and Rutgers — deciding to proceed against the Consortium alone — as well as multiple FCA counts. See ECF No. 18. He added a constructive-discharge claim alongside his sole remaining FCA claim. Id., ¶¶ 114-18.

A review of Plaintiff's Amended Complaint, which must be presumed true for purposes of this Motion, shows that the gravamen of his suit remains: he alleges that the Consortium obtained grants by fraud, lied and covered up its subcontractors' work, and then fired Wims for blowing the whistle and reporting this misconduct. Id., ¶ 1. Count I, an FCA claim, alleges that Plaintiff "was discriminated against in the terms and conditions of his employment by [the Consortium] in retaliation for lawful acts taken by [him] to prevent and report violations of the False Claims Act." Id., ¶ 111. Count II, wrongful discharge, alleges that the Consortium fired

him "for refusing to engage in illegal activity" and also for having reported the misconduct. Id., ¶¶ 116-17.

Defendant has now moved to dismiss Count II under Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 238 (1974).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting

3

Papasan v. Allain, 478 U.S. 265, 286 (1986)).  For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," moreover, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Rhodes, 416 U.S. at 236).

III.   **Analysis**

The Court has previously explained that at-will employees have a remedy in the District of Columbia when they are fired under certain circumstances:

> The general law "in the District of Columbia [is] that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) (citations omitted).  In Adams, the D.C. Court of Appeals held that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."  Id. at 34.

Robinson v. Securitas Servs., Inc., 819 F. Supp. 2d 18, 20 (D.D.C. 2011).

In moving to dismiss here, the Consortium does not gainsay that Wims's allegations fit within the narrow public-policy exception articulated in Adams and subsequently broadened in ways not relevant here.  Robinson, 819 F. Supp. 2d at 20.  Instead, Defendant offers a different position — namely, that Plaintiff cannot proceed under the exception where the very statute he claims was violated provides him full relief.  More specifically, because he can fully recover under his FCA count, this additional count would be duplicative.  See ECF No. 21 (Def. MTD) at 4-5.

The Consortium starts with Nolting v. National Capital Group, Inc., 621 A.2d 1387 (D.C. 1993), where the plaintiff sought to maintain a wrongful-discharge claim when she was fired in retaliation for seeking workers' compensation.  The D.C.C.A. held that her sole route was to

4

proceed under the Workers' Compensation Act, as the public-policy exception cannot "be invoked where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation." Id. at 1390. Defendant cites a number of other cases that follow the Nolting rule, see MTD at 5 n.2, none more apposite than United States ex rel. Hood v. Satory Global, Inc., 946 F. Supp. 2d 69 (D.D.C. 2013). There, just as here, a relator filed an FCA action that also included other claims, including for wrongful discharge. Applying the principles articulated in Nolting and other decisions, the court dismissed the count for wrongful discharge on the ground that the FCA already provides the remedy. Id. at 89. Similarly, in Kassem v. Washington Hospital Center, 513 F.3d 251 (D.C. Cir. 2008), the D.C. Circuit addressed a wrongful-discharge claim brought by a plaintiff alleging he had been fired for being a whistleblower regarding violations of Nuclear Regulatory Commission regulations. In affirming the district court's dismissal, the Circuit cited Nolting in noting that the Energy Reorganization Act, the statutory source of the regulations upon which Kassem relied, provides its own significant remedy. Id. at 254-55.

Faced with this panoply of contrary authority, Plaintiff does not contend that the FCA contains no sufficient remedy. Indeed, it would be odd for him to press such an argument given that Count I of his Amended Complaint seeks extensive relief under that Act. He maintains instead that he is basing his wrongful discharge on public policies separate from the FCA. See ECF No. 22 (Pl. Opp.) at 7-10. He then cites a number of statutes relating to fraud and honest services. Id. at 7. While it may be true that the Consortium, if it has acted as alleged, may have violated other laws, that does not change the crux of this suit from one under the FCA. Plaintiff's initial Complaint, in fact, weighed in at a beefy 59 pages and contained nothing beyond FCA claims. See ECF No. 1. The factual allegations in his Amended Complaint are no

5

broader, and the fact that he has tacked on a wrongful-discharge count does not alter what his suit is truly about. Indeed, that count expressly states, "The misconduct identified in this Amended Complaint was illegal because, *inter alia*, it violated the FCA." Am. Compl., ¶ 116. The Court, consequently, will not permit this duplicative count to proceed.

## IV. Conclusion

Count II will be dismissed without prejudice. An accompanying Order will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 6, 2020